UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| MARVIN L. MORELOCK | ) | |
| | ) | |
| v. | ) | NO. 2:04-CV-346 |
| | ) | |
| JO ANNE B. BARNHARDT, | ) | |
| Commissioner of Social Security | ) | |

## **MEMORANDUM OPINION**

The plaintiff Marvin L. Morelock has filed a motion for a judgment on the pleadings [Doc. 9] on his complaint to obtain judicial review of the final decision of the defendant Commissioner of Social Security Jo Anne B. Barnhardt to deny his application for disability insurance benefits under the Social Security Act. The defendant has filed a motion for summary judgment. [Doc. 12].

Mr. Morelock was born in 1944 and was 59 years old at the time of his administrative hearing. [Tr. 179]. He completed eighth grade and has relevant past work experience as a gathering machine operator and a saddle stitching machine operator. [Tr. 20, 179]. Mr. Morelock alleges he is disabled as of January 18, 2002, from asthma, lung disease, chronic obstructive pulmonary disorder, diabetes, diverticulitis, a herniated disc, and impingement syndrome in his shoulder. [Tr. 46]. Based upon a finding that his impairments were severe but not severe enough, the

Administrative Law Judge [ALJ] found that Mr. Morelock was not disabled as defined by the Social Security Act. [Tr. 17].

Dr. Daniel Dickerson was Mr. Morelock's treating physician from February 1996 until April 2003. [Tr. 97-108]. When Mr. Morelock complained in February 1996 about congestion, wheezing, and sputum production, the doctor told him to quit smoking. [Tr. 108]. In September 1996, Mr. Morelock's wife requested a note restricting him to working only 40 hours a week. [Tr. 107]. Dr. Dickerson told her "there were possible problems associated" with him writing the note, but he wrote it regardless. [*Id.*]. In March 1997, Mr. Morelock was still smoking. [*Id.*]. In April 1997, a CAT scan showed a renal cyst and diverticulitis. [Tr. 106, 142].

In October 1997, Mr. Morelock was found to have disc degeneration at L2-L3 and L4-L5, and it was suspected that he had spinal stenosis. [Tr. 136].

In March 1998, Mr. Morelock presented to Dr. Dickerson with right shoulder pain. [Tr. 106]. In July 1998, his asthma was worse, and he was again instructed to quit smoking. [*Id.*].

In March 1999, Mr. Morelock told Dr. Dickerson that he quit smoking. [Tr. 105]. In June 1999, he was put on a 40-hour work week restriction because of his asthma. [*Id.*]. In January 2000, Dr. Dickerson said Mr. Morelock was "not doing really well" because he continued to have a lot of wheezing and increased episodes

of shortness of breath. [Tr. 104]. In March 2000, the doctor was concerned that Mr. Morelock was not properly taking his medication. [*Id*.]. His lungs, however, were clearer than they had been in the last couple of years. [*Id*.]. In August 2000, Mr. Morelock came to his appointment wanting a note for work to restrict him from lifting more than 30 pounds and working more than eight hours a day. [Tr. 103]. The doctor provided such a note. [*Id*.]. In November 2000, Mr. Morelock stated that he really did not have complaints or problems. [*Id*.]. In March 2001, the doctor was worried that Mr. Morelock was in a pre-diabetic state, and he was encouraged to be active, exercise, walk 45 minutes a day, restrict his calories, and lose weight. [Tr. 102]. In July 2001, Dr. Dickerson noted that Mr. Morelock was "doing his usual," *i.e.*, not taking his medication. [*Id*.]. Mr. Morelock's right shoulder was still painful, and the doctor prescribed medication and exercises. [*Id*.]. In October 2001, Mr. Morelock's shoulder hurt so much that he could not raise his hand to shake the doctor's hand. [Tr. 101]. He wanted additional work restrictions of lifting no more than 30 pounds and no use of his upper extremities. [*Id*.]. The doctor again raised concerns about doing this but acquiesced. [*Id*.].

At some point, Mr. Morelock began smoking again because in January 2002, Dr. Dickerson again encouraged him to quit. [Tr. 101]. He had been to an orthopedist and diagnosed with impingement syndrome. [*Id*.]. In April 2003, Mr. Morelock

3

began having episodes of seeing flashing lights and then finding himself on the floor. [Tr. 97]. Mr. Morelock also told the doctor he had a history of migraines, although Dr. Dickerson said he never evaluated him for one. [*Id.*]. The doctor told him to stop driving and completed another form which indicated he had the capacity for sedentary work. [Tr. 97-98, 172].

In March 2003, Dr. Wayne Page examined Mr. Morelock in connection with his application for benefits. [Tr. 144-47]. The doctor diagnosed him with right shoulder impingement and back pain. [Tr. 147]. He found he could occasionally lift/carry 25 pounds, frequently lift/carry 10 pounds, and stand/walk/sit for eight hours in an eight-hour day. [*Id.*]. Mr. Morelock had no impairments related to hearing, speaking, vision, or traveling. [*Id.*].

That same month, Dr. George Bounds evaluated Mr. Morelock in connection with his application for benefits. [Tr. 152-59]. The doctor found he could occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds, sit/stand/walk for six hours out of an eight-hour workday, and he was limited in his upper extremities for pushing and pulling. [Tr. 153]. Mr. Morelock was also to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. [Tr. 156].

In July 2003, a state agency physician reviewed Mr. Morelock's medical records. [Tr. 160-67]. The doctor found he could occasionally lift/carry 50 pounds,

4

frequently lift/carry 25 pounds, sit/stand/walk for six hours out of an eight-hour workday, and he was unlimited in pushing and pulling. [Tr. 161]. He could only occasionally climb ladders, ropes, and scaffolding and could only occasionally crawl. [Tr. 162]. Mr. Morelock was also limited in his ability to reach in all directions, including overhead. [Tr. 163]. He was also to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards. [Tr. 164].

At Mr. Morelock's administrative hearing held on February 23, 2004, Mr. Morelock's testimony was received into evidence. [Tr. 178-93]. Mr. Morelock began working as a gathering machine operator before he was 15 years old. [Tr. 179-80]. Mr. Morelock was laid off from that position when the plant closed. [Tr. 180]. He received unemployment insurance for about seven and a half months after certifying to the state agency that he was willing and able to work. [Tr. 180-81]. Mr. Morelock testified his lower back pain that radiates into his left leg prevented him from working. [Tr. 181]. His right shoulder has an impingement, and he has difficulty moving it. [Tr. 183]. The only pain medication Mr. Morelock takes is Tylenol, and he uses a cream and heating pad on his back. [Tr. 186]. Mr. Morelock smokes a pack to a pack and a half of cigarettes each day. [Tr. 190].

The ALJ ruled that Mr. Morelock was not disabled because he retained the residual functional capacity [RFC] to perform his past relevant work. [Tr. 15]. He

5

retained the RFC to perform medium work, which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." [Tr. 17].

This court must affirm an ALJ's conclusions unless the ALJ applied incorrect legal standards or made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405g. "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Accordingly, this court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

Mr. Morelock requests a judgment on the pleadings and challenges the ALJ's determination that he retained the RFC to perform medium work. Because the only medical evidence supporting a claim of sedentary work came from his treating physician, Dr. Daniel Dickerson, Mr. Morelock's additional claim that the ALJ failed to properly weigh the opinions of his treating physician will be considered now as well. According to Dr. Dickerson, Mr. Morelock could only perform sedentary work.

[Tr. 172]. The ALJ noted that "Dr. Dickerson's conclusion that [Mr. Morelock] is only able to perform sedentary work is neither buttressed, nor explained by any laboratory results or clinical findings in the file." [Tr. 18]. Overall, the ALJ found that Dr. Dickerson's assessment was "of no probative value," and it was rejected. [*Id.*].

Under Sixth Circuit law, the ALJ is permitted to give great weight to the opinions of a treating physician when determining if a disability exists. See *Walker v. Secretary*, 980 F.2d 1066, 1070 (6th Cir. 1992). However, the ALJ is not bound by this rule if the physician's opinion conflicts with other substantial evidence and is not supported by medically acceptable clinical and laboratory diagnostic techniques. See 20 C.F.R. § 404.1527 (d)(2).

Dr. Dickerson's opinion conflicts with the opinions of three different doctors. Dr. Page found Mr. Morelock could occasionally lift/carry 25 pounds, frequently lift/carry 10 pounds, and stand/walk/sit for eight hours in an eight-hour day. [Tr. 147]. Dr. Bounds determined Mr. Morelock could occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds, sit/stand/walk for six hours out of an eight-hour workday, and he was limited in his upper extremities for pushing and pulling. [Tr. 153]. Finally, another doctor reviewed the record and found Mr. Morelock could occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds, sit/stand/walk for

7

six hours out of an eight-hour workday, and he was unlimited in pushing and pulling. [Tr. 161]. All three of these doctors placed Mr. Morelock's abilities far beyond those necessary for only sedentary work.[1]

In addition, Dr. Dickerson's opinion that Mr. Morelock could only perform sedentary work is not supported by the evidence in the record. It appears Dr. Dickerson simply followed Mr. Morelock's subjective allegations of not being able to even perform sedentary work. [Tr. 97]. In addition, on the form he completed, Dr. Dickerson did not provide any indication on what he was basing his opinion. [Tr. 172]. The ALJ's rejection of Dr. Dickerson's opinion that Mr. Morelock could perform sedentary work and the ALJ's determination that he could perform medium work were both made with substantial evidence.

Finally, Mr. Morelock disputes the ALJ's finding that he could return to his past relevant work as a gathering machine operator and saddle stitching machine operator. As the ALJ noted, according to the *Dictionary of Occupational Titles* those positions are not precluded by Mr. Morelock's RFC. [Tr. 20]. The RFC for medium work determined by the ALJ has been found by this court to be based in substantial evidence. Consequently, Mr. Morelock's claim that he cannot return to his past

---

[1] According to 20 C.F.R. § 404.1567 (a), sedentary work involves mostly sitting, lifting no more than 10 pounds at one time, and the occasional walking and standing.

8

relevant work must fail.

Accordingly, Mr. Morelock's motion for a judgment on the pleadings will be denied, the defendant's motion for summary judgment will be granted, and this action will be dismissed.

An appropriate order will follow.

ENTER:

                                            s/Thomas Gray Hull
                                            THOMAS GRAY HULL
                                              SENIOR U. S. DISTRICT JUDGE